UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRY HUSPON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:14-cv-01388-JMS-DKL |
| ) | |
| DUSHAN ZATECKY, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas Corpus**

The petition of Terry Huspon for a writ of habeas corpus challenges a prison disciplinary proceeding identified as ISR 14-04-0033. For the reasons explained in this Entry, Huspon's habeas petition must be **denied**.

**Discussion**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On April 1, 2014, Officer Randolph at the Pendleton Correctional Facility, wrote a Report of Conduct in case number ISR 14-04-0033 charging Huspon with attempted class A (later modified to Class B) assault on another person. The conduct report states as follows:

> On the above date at the approximate time I Ofc. Randolph was escorting Offender Harmon DOC# 209137 (186c) to the shower. As we passed Offender Huspon, Terry DOC# 882533 cell Offender Huspon attempted to assault Offender Harmon with what appeared to be a homemade weapon. Cell was searched and nothing was found.

On April 10, 2014, Huspon was notified of the charge of attempted class A assault (Codes 111 and 102), and served with the Notice of Disciplinary Hearing (Screening Report). The screening report notified Huspon of his rights; Huspon pled not guilty, requested 24 hours' notice, and requested a lay advocate. Further, Huspon requested access to video footage of the incident and asked that the following offenders serve as witnesses in his case: Smith (887655), Tobar (995247), Terry (106120), and Bufkin (973609). Huspon also asked that offender Harmon, Huspon's intended victim, be a witness at the hearing as well. The facility denied Huspon's request to view the video which, in any event, did not provide a view of the area in question due to the camera's position.

A disciplinary hearing was conducted on April 14, 2014. At the hearing, Huspon waived his right to a lay advocate and further stated, "I'm not guilty of anything. It's no big deal. Everybody knows we play. They did it again last night. It's no big deal. I don't have any intention to hurt nobody." Offender Terry (106120) gave a written statement:

> Huspon told me and others to watch as he made the other offender jump when he poked at the offender with a toothbrush. This was done in a jokeing (sic) matter. He's dones this to me just as I've joked with him. Catching a person off gaurd (sic). It's all in good humor. One of the Cos even laughs at the situation. For unknown reasons it's been turned into something it's not. Scare tactics is in all good fun. It's an everyday worldly event.

In lieu of testifying at Huspon's hearing, Tobar provided the following written statement: "Huspon didn't have a weapon, when he reached out through the cup port (sic), I only observed in his hand a toothbrush. He was just pulling a prank on Offender Harmon." Similarly, Smith wrote:

> I was standing at my door when they were running showers. I saw Harmon do some kind of dance and squeal, as he and my neighbor in cell 8 are always playing. He was in the middle to other side of the range. What I saw is my neighbors hand was just a toothbrush that he always carries that to the shower with him anyways. I never saw any attempted assault, as I said those two are always jokeing (sic) around with each other.

Finally, Bufkin provided in writing:

> On the above date and incident in question, there wasn't a weapon Huspon had in his hand, it was a toothbrush. We were talking about basketball in the shower and continue the conversation once we got back in the cell. [A]s we were talking Mr. Huspon was brushing his teeth, and Mr. Harmon came pass and offender Huspon stuck his arm out the food slot acting like he was trying to grab him, playing around. For some reason the officer walking Harmon assume they were serious, but should've known better because every shower day we all play like this, and no officer had any problem with us doing this in the past, except that day. It's nothing serious. Just all fun.

At the conclusion of the proceeding, the hearing officer relied upon the staff report, Huspon's statement, evidence from witnesses, and other evidence in finding Huspon guilty of attempting to commit a class A assault. The hearing officer also noted that the "Ofd. gave written statement stating it was from Ofd. Harmon," but that the statement was not considered. At the end of the hearing, the following sanctions were imposed: a 180-day deprivation of earned credit time, six months of disciplinary segregation and a written reprimand.

On November 6, 2014, the Department of Correction reviewed Huspon's case and changed the charge and conviction to the lesser-included class B attempted assault and reduced his earned credit time loss to 90 days. A Class B attempted assault is defined by the disciplinary code for adult offenders as "committing a battery assault upon another person without a weapon or inflicting bodily injury." Dkt. 18 at p.3; dkt. 10-7 at p. 1.

3

**C. Analysis**

In his Petition, Huspon claims that all he is guilty of is horseplay and that he did not receive due process because exculpatory evidence was presented but not considered and additional exculpatory evidence was requested but not provided. Huspon further claims that due process was violated because the responses from the facility head and Department of Correction regarding his appeal did not show meaningful review.

In response, Huspon's custodian argues that there were no due process violations and even if there were, any such violations were harmless because the outcome of the proceeding would not have changed if the alleged violations did not occur. When a due process error occurs in a disciplinary proceeding, the burden is on the offender to show that the error had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch*, 513 U.S. 432 (1995).

First, Huspon alleges that exculpatory evidence was requested but not provided, in particular security camera footage. It is well established that "the right to present evidence is qualified—prison officials may exclude evidence from an inmate's hearing to ensure institutional safety or correctional goals." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002) (citing *Wolff*, 418 U.S. at 566). Here, facility officials considered Huspon's request but determined that allowing him to view the video would comprise facility security. In any event, the record reflects that the video would not have revealed any relevant information due to the camera position. Thus, there was no harm in the denial of this video.

Second, Huspon argues that he was denied the opportunity to present testimony from additional witnesses, specifically a written statement from his alleged victim and from the officer who wrote the conduct report. Huspon does not explain what the additional testimony would have shown and whether it would have differed from the witness statements of record. Four offenders

testified on Huspon's behalf. The facility's denial of additional testimony is not a due process violation since "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Wolff*, 418 U.S. at 566.

Finally, Huspon does not deny that the incident took place, but he argues that it was merely "horseplay." This claim challenges the sufficiency of the evidence. A rational adjudicator, however, could readily conclude from the content of the conduct report that Huspon was guilty of attempted assault. The conduct report prepared by Officer Randolph states: "As we passed Offender Huspon, Terry DOC# 882533 cell Offender Huspon attempted to assault Offender Harmon with what appeared to be a homemade weapon." At the disciplinary hearing, the witnesses testified that Huspon "poked" at Offender Harmon or "act[ed] like he was trying to grab him." Thus, while the witness statements dispute Huspon's intent, they corroborate Officer Randolph's statements about Huspon's actions.

The only way the Court could rule in favor of Huspon is to accept his invitation to reweigh the evidence—and that is an invitation the court must **reject.** This is because, in reviewing the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999); *see also Meeks v. McBride,* 81 F.3d 717, 720 (7th Cir. 1996) ("because the 'some evidence' standard . . . does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is '[g]enerally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied' in support of its conclusion.")(*quoting Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir. 1989)). Instead, the

"some evidence" standard of *Hill* is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson,* 188 F.3d at 786. The evidence here was constitutionally sufficient and no further consideration is appropriate. *See Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1993) (a federal habeas court "will overturn the [hearing officer's] decision only if no reasonable adjudicator could have found [the petitioner] guilty of the offense on the basis of the evidence presented.").

Finally, Huspon's claim that his arguments on appeal were not given meaningful review is not supported by the record. Indeed, the record shows that Huspon was given his guaranteed right to a hearing before an impartial decision maker and was allowed to appeal his charge to both the head of the facility and the Indiana Department of Correction. There is no indication that inadequate attention was given to Huspon's case. To the contrary the record reflects that the Department of Correction reviewed Huspon's case and ultimately changed the charge and conviction to the lesser-included class B attempted assault and reduced his earned credit time loss to 90 days.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Huspon to the relief he seeks. Accordingly, Huspon's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: ___10/5/2015___

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

TERRY HUSPON
882533
PENDLETON – CF
Electronic Service Participant -- Court Only

All Electronically Registered Counsel